Casey Kovacic, OSB 083860
Law Office of Casey Kovacic, LLC
249 NE Lincoln St.
Hillsboro, Oregon 97124
(503) 693-8725
casey@kovaciclaw.com
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK ROBERT ANGEL,**<br><br>**Defendants.** | **Case: 3:26-cr-00046-IM**<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO GOVERNMENT'S MOTION FOR BREACH OF PLEA AGREEMENT** |

Defendant Frank Robert Angel, through counsel, opposes the government's Motion for Breach of Plea Agreement. ECF No. 31.

On August 18, 2026, Mr. Angel pleaded guilty to one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The Court continued his release pending sentencing given his performance on pretrial supervision, including his successful completion of outpatient drug treatment. Sentencing is scheduled for November 10, 2026.

Under the plea agreement, the government agreed to recommend a two-level early-resolution variance, recommend a sentence at the low end of the Guidelines range if Mr. Angel demonstrated acceptance of responsibility, and refrain from seeking an

upward departure, adjustment, variance, or above-Guidelines sentence except as expressly provided in the agreement. Plea Agreement ¶¶ 9, 10, 12. Paragraph 17 provides that the government is relieved of these obligations if Mr. Angel violates the agreement or commits a new criminal offense between execution of the agreement and sentencing.

The government's breach argument rests on two arrests. Neither has resulted in a criminal conviction. Mr. Angel retains the presumption of innocence as to both incidents, and the evidence presented by the government falls well short of establishing that he committed a new criminal offense.

## I. THE GOVERNMENT HAS NOT ESTABLISHED THAT MR. ANGEL COMMITTED A NEW CRIMINAL OFFENSE

### A. The September 6th incident does not establish reckless driving or reckless endangering.

On September 6, 2026, Portland police officers found Mr. Angel asleep in the driver's seat of his truck, which had come to rest against a parked vehicle. When officers woke him, he appeared startled and disoriented, seemingly emerging from a deep sleep, and was initially incoherent. He was arrested for reckless endangering, criminal mischief, reckless driving, and DUII.

The Multnomah County District Attorney's Office subsequently declined to prosecute the incident. That decision is significant. The agency with access to the investigation, witnesses, and available evidence apparently determined that prosecution was not warranted. The government's motion does not identify any additional evidence that would explain why this Court should reach a different conclusion.

The investigative record provided by the government has substantial gaps. No field sobriety tests were administered. No Drug Recognition Expert responded to evaluate

Mr. Angel. No toxicology results have been produced. And body-camera footage depicting an interview of Mr. Angel in a holding cell after his arrest shows an individual who appears coherent and unimpaired. (Footage to be provided in advance of hearing).

Mr. Angel immediately notified U.S. Pretrial Services about his law enforcement contact and arrest. The day after his arrest, Mr. Angel voluntarily reported to Pretrial Services to discuss what had happened. He denied being under the influence of intoxicants. He explained that he had taken medication for a toothache, became increasingly tired while driving home from work, pulled over because he was exhausted, and ultimately fell asleep. He awoke to find law enforcement taking him into custody.

At a subsequent hearing before Magistrate Judge Beckerman, Mr. Angel acknowledged that he had recently experienced a relapse. But the government's characterization of that acknowledgment is inaccurate. Mr. Angel did not admit that he had consumed a substance before driving on September 6th, or at any other particular time. He did not identify a substance, specify when the relapse occurred, or connect it to either incident.

The government bears the burden of establishing the alleged disqualifying conduct by a preponderance of the evidence. ECF No. 31 at 3 (citing *United States v. Plascencia-Orozco*, 852 F.3d 910, 920–21 (9th Cir. 2017)). But that standard does not relieve the government of its obligation to prove the actual elements of the criminal offenses it alleges.

Paragraph 17 is triggered if Mr. Angel commits a new criminal offense. The government therefore must establish the elements of the Oregon offenses on which it

relies, including reckless driving under ORS 811.140 and reckless endangering another person under ORS 163.195.

Both offenses require proof of recklessness. Under ORS 161.085(9), a person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk, and that disregard constitutes a gross deviation from the standard of care a reasonable person would observe in the situation. Reckless driving additionally requires that the person drive in a manner that endangers the safety of persons or property. ORS 811.140(1).

The government asks the Court to find these demanding elements established through police reports and selected body-camera footage. But the question is not simply whether an incident occurred or whether Mr. Angel exercised poor judgment. The government must establish that he consciously disregarded a substantial and unjustifiable risk and that his conduct amounted to a gross deviation from reasonable care. Its motion largely ignores that requirement.

Oregon appellate courts have made clear that evidence of intoxication or otherwise questionable driving does not, standing alone, establish criminal recklessness. In *State v. Brown*, 305 Or App 644, 649 (2020), the Court of Appeals expressly held that driving while intoxicated does not automatically establish reckless driving; "[s]omething more is required." See also *State v. Luke*, 104 Or App 541, 546, 802 P2d 672 (1990) (reversing a reckless-driving conviction where the jury instruction improperly permitted the jury to equate a finding of DUII with a finding of recklessness). The government must establish more than impairment or an unfortunate driving incident. It must prove that Mr. Angel was aware of and consciously disregarded a substantial and unjustifiable risk, and

that his disregard constituted a gross deviation from the standard of care a reasonable person would observe.

The government's reliance on Mr. Angel's apparent, and forensically uncorroborated, impairment therefore does not resolve the central question: whether he consciously disregarded a substantial and unjustifiable risk.

Indeed, Oregon's decision in *State v. Martsch*, 296 Or App 896, 898 (2019), is particularly instructive. There, the defendant became drowsy while driving, continued driving, eventually fell asleep, and struck a neighbor's house. The Court of Appeals reversed convictions for reckless driving, reckless endangering, and criminal mischief, concluding that the defendant's decision to continue driving after becoming drowsy did not constitute a gross deviation from the standard of care. *Id.* (citing *State v. S.N.R.*, 260 Or App 728, 739 (2014) (looking for a place to pull over was not a gross deviation from the standard of care)).

The circumstances here are materially similar. Mr. Angel was exhausted after a long workday and after allegedly taking medication for a toothache. It appears he ultimately fell asleep while driving. Even if his truck made contact with a parked vehicle in the process, *Martsch* makes clear that those circumstances do not, without more, establish criminal recklessness.

**B. Mr. Angel did not admit to driving under the influence, and his statements to Pretrial Services cannot be used to establish guilt.**

A substantial portion of the government's September 6th argument rests on its assertion that Mr. Angel admitted to both Pretrial Services Officer Angela Peru and

Magistrate Judge Beckerman that he was under the influence of gabapentin while driving. ECF No. 31 at 4. That assertion mischaracterizes the record. Mr. Angel did not admit to Pretrial Services that he drove under the influence. Officer Peru's October 8, 2026, violation report states:

> "[Mr. Angel] denied being under the influence of intoxicants. He informed [me] on that date he had taken medication due to having a tooth ache and began feeling sleepy while driving home from work. Due to his exhaustive state, he pulled over and fell asleep and was awoken later by law enforcement who took him into custody."

Peru Violation Report at 2 (Oct. 8, 2026).

That is an account of fatigue, not an admission of criminal conduct.

There is an additional and independent problem with the government's reliance on this conversation. Information obtained by Pretrial Services in the performance of its duties "shall be used only for the purposes of a bail determination and shall otherwise be confidential." 18 U.S.C. § 3153(c)(1). Such information is generally inadmissible on the issue of guilt in a criminal judicial proceeding, subject to exceptions that do not apply here. 18 U.S.C. § 3153(c)(3).

The government is attempting to use Mr. Angel's statements to his supervising Pretrial Services Officer for precisely the purpose Congress prohibited: establishing his guilt of new criminal offenses. The confidentiality protections in § 3153 exist to encourage candid communication between defendants and Pretrial Services. Allowing the government to repurpose those conversations as evidence of new criminal conduct would undermine that statutory protection and discourage the very cooperation the pretrial release system depends upon.

The government should not be permitted to use Mr. Angel's statements to Pretrial Services as evidence of guilt in this proceeding.

Nor did Mr. Angel admit anything about September 6th at the hearing before Judge Beckerman. He acknowledged experiencing a relapse. The government offers no evidence establishing when that relapse occurred, what substance was involved, or whether it had any connection to either incident. An acknowledgment of a setback in recovery is not an admission to driving under the influence.

Mr. Angel should not be penalized for being candid with the Court about his recovery. Treating an honest acknowledgment of a relapse as proof of a new criminal offense would discourage the transparency that effective supervision and recovery require.

The gabapentin pills reportedly found in Mr. Angel's truck do not bridge the evidentiary gap. Possession of medication does not establish whether, when, or how much of it was ingested, much less whether it impaired his ability to drive. The government has offered no toxicology evidence establishing that Mr. Angel was under the influence of any intoxicant on September 6th.

Without an admission, the government is left principally with officers' impressions that Mr. Angel "appeared to be seriously impaired." ECF No. 31 at 4. That observation, standing alone, does not establish the mental state required for either reckless driving or reckless endangering.

**C. The October 7th incident does not establish reckless driving or any other criminal offense.**

The October 7th incident is even less persuasive. According to the government, officers encountered Mr. Angel's vehicle stopped in a turn lane late in the evening. The

traffic signal cycled through several green lights without the vehicle moving. After officers contacted Mr. Angel, he appeared confused about where his glasses were. ECF No. 31 at 2, 4. That is the entirety of the government's driving-related evidence. There is no allegation that officers observed Mr. Angel weaving, speeding, crossing lane lines, driving erratically, or coming close to another vehicle or pedestrian. In fact, the officers do not describe the vehicle moving at all.

As *Brown* makes clear, reckless driving focuses on the manner in which a person drives. 305 Or App 644. A vehicle sitting stationary in a turn lane is not being driven in a manner that endangers the safety of persons or property. The government does not identify a single person or piece of property placed at risk by the manner in which Mr. Angel operated his vehicle.

Nor does confusion about the location of one's glasses establish criminal recklessness. That observation is equally consistent with exhaustion, disorientation, or a medical issue, including Mr. Angel's established poor eyesight. And, once again, the government has provided no toxicology evidence establishing impairment.

The government cannot establish reckless driving simply by pointing to a vehicle that failed to move through a traffic signal and an individual who appeared confused when officers approached him.

**D. The untested substance found in the handbag does not establish possession or any new criminal offense.**

During the October 7th encounter, officers searched the vehicle and located a Louis Vuitton handbag containing what the government characterizes as "8.6 grams of fentanyl." ECF No. 31 at 2.

The substance has not been tested by the Oregon State Police Forensic Laboratory. The presumptive field test reportedly produced a range of possible substances rather than a definitive identification. A presumptive field test is a preliminary screening tool, not a conclusive identification of a controlled substance. The government has offered no laboratory confirmation that the substance was fentanyl.

More fundamentally, the government does not contend that Mr. Angel knowingly possessed the substance. The body-camera footage reflects that officers themselves believed the handbag belonged to a woman, with one officer stating, "I assume this is his girlfriend's."

Mere proximity to another person's belongings does not establish knowing possession. To establish constructive possession, the state must prove that the defendant knowingly exercised control over, or had the right to control, the contraband. *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999). The government offers no evidence that Mr. Angel owned the handbag, knew what it contained, exercised control over its contents, or had the right to control them.

The government cannot establish possession simply because the handbag was located inside a vehicle Mr. Angel was driving, particularly where the officers' own statements suggest that they believed it belonged to someone else.

There is also no confirmed identification of the substance. The government has neither a crime-laboratory report establishing that the substance was fentanyl nor evidence establishing that Mr. Angel knowingly possessed it. This allegation should not be considered as proof of any criminal offense.

**II. THE GOVERNMENT HAS NOT ESTABLISHED A BASIS TO WITHDRAW ITS ACCEPTANCE-OF-RESPONSIBILITY RECOMMENDATION.**

The same deficiencies defeat the government's request to withdraw its recommendation under paragraph 9 of the plea agreement. Paragraph 9 permits the government to change its acceptance-of-responsibility recommendation if Mr. Angel commits a new criminal offense, obstructs justice, or otherwise acts inconsistently with acceptance of responsibility under U.S.S.G. § 3E1.1.

For the reasons discussed above, the government has not established that Mr. Angel committed a new criminal offense. Nor has it demonstrated conduct inconsistent with acceptance of responsibility.

Mr. Angel accepted responsibility for his offense early in this case. He completed outpatient drug treatment. He voluntarily reported to Pretrial Services the day after the September 6, 2026 incident to discuss what had happened. And he was candid with Judge Beckerman about his recent relapse, even though no Pretrial Services test had conclusively shown drug use.

The government is effectively asking the Court to treat a setback in Mr. Angel's recovery as evidence that he no longer accepts responsibility for the firearm offense to which he pleaded guilty. Those are different things.

Recovery is rarely a linear process, particularly for someone with a long history of trauma and substance abuse. A relapse does not erase the progress Mr. Angel has made, undo his admission of guilt, or establish that he has abandoned responsibility for his conduct. His willingness to acknowledge the setback, rather than conceal it, is consistent

with the acceptance and honesty the Court should expect from someone attempting to maintain his recovery.

There is simply no basis to conclude that Mr. Angel's conduct warrants withdrawing the government's agreed-upon acceptance-of-responsibility recommendation.

**CONCLUSION**

The government's motion asks the Court to treat two unresolved arrests as proof that Mr. Angel committed new criminal offenses. The first incident did not even result in a prosecution, and the second incident has yet to be adjudicated in Multnomah County Circuit Court. Neither has resulted in a conviction. And the evidence presented does not establish the elements of the offenses the government alleges, particularly the required mental state of recklessness.

The government bears the burden of proving a breach by a preponderance of the evidence. It has not met that burden. It should not be permitted to escape the obligations it undertook in the plea agreement based on speculation, unsubstantiated allegations, and evidence that does not establish criminal conduct.

Respectfully submitted this 6th day of November, 2026.

/s/ *Casey Kovacic*
Casey Kovacic
Attorney for Defendant